# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

IN RE

**NECTARIOS FATSIS,**

Debtor

---

**JOSEPH BRAUNSTEIN,**
**CHAPTER 7 TRUSTEE,**

Plaintiff

**v.**

**NECTARIOS FATSIS,**

Defendant

**Chapter 7**
**Case No. 03-19121-FJB**

**Adversary Proceeding**
**No. 09-1059**

### MEMORANDUM OF DECISION ON
### THE CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTOR'S DISCHARGE

By his complaint in this adversary proceeding, the chapter 7 trustee, Joseph Braunstein

(the "Trustee"), objects under 11 U.S.C. § 727(a)(6)(A) to the discharge of the defendant and

debtor, Nectarios Fatsis (the "Debtor"), on the basis of the Debtor's alleged refusal during this

bankruptcy case to obey a lawful order of the court.  The order in question is the order

confirming the Debtor's chapter 13 plan and, in particular, the provision thereof enjoining the

Debtor from "sell[ing] . . . property of the estate other than in accordance with a confirmed plan

or other order of the bankruptcy court."  The Trustee contends that the Debtor's sale during this

case of certain stock he owned in order to cure a plan-payment arrearage amounted to a refusal

to obey this order.  On May 19, 2010, the Court conducted a trial of the matter at which only the

Debtor testified and thirteen exhibits were introduced into evidence.  On the basis of the

evidence adduced and pursuant to FED. R. CIV. P. 52(a)(1), the Court now enters the following

findings and conclusions and, for the reasons thus articulated, will enter judgment for the

Debtor.


**Facts**

On October 31, 2003, the Debtor filed a voluntary petition for relief under Chapter 13 of

the Bankruptcy Code.  Among his assets at the time were 1,000 shares of stock in EMC

Corporation (the "Stock").  The Debtor duly listed the Stock on his schedule of personal property

and stated there that its value was $12,000.

In his case the Debtor also filed a Chapter 13 plan under which he would make plan

payments to the Chapter 13 trustee totaling $36,500, including twelve monthly payments of

$150 and a lump sum for the balance, the latter to be paid on or before the January 1, 2005,

from the proceeds of the Debtor's sale of a condominium he then owned.  On May 13, 2004, the

Court entered an order confirming the plan (the "Confirmation Order").  The Confirmation Order

included the following language:

> Unless otherwise ordered by the court, all property of the estate
> as defined in U.S.C. §§ 541 and 1306 including, but not limited to,
> any appreciation of the value of the real estate owned by the
> debtor as of the commencement of the case, shall remain property
> of the estate during the term of the plan and shall vest in the
> debtor(s) only upon discharge.  All property of the estate shall
> remain within the exclusive jurisdiction of the bankruptcy court.
> The debtor(s) shall not transfer, sell or otherwise alienate property
> of the estate other than in accordance with a confirmed plan or
> other order of the bankruptcy court.  The debtor shall be
> responsible for preserving and protecting property of the estate.

At the commencement of the case and through its first fourteen months, the Debtor was

represented in the case by attorney William Markley.  However, in December, 2004, Markley

moved to withdraw as Debtor's counsel, citing "irretrievable breakdown of their professional

relationship," and on December 29, 2004, with no opposition having been filed, the Court

allowed the motion.  From this motion and from testimony of the Debtor, it is clear that relations

between attorney and client had long been strained, exacerbated in part by the fact that the

2

Debtor had been out of the country for several months in 2004, making communications difficult. After December 29, 2004, and throughout the events in 2005 that form the basis of the Trustee's present complaint, the Debtor acted entirely pro se, without benefit of legal counsel.

On January 10, 2005, when the time for completion of the plan had passed, the Chapter 13 trustee moved to dismiss the case on the basis that the Debtor had failed to make required plan payments totaling $35,300.00. The Debtor objected to the motion, whereupon the court set the matter for hearing. On March 3, 2005, after a hearing held that day, the Court (by Judge Somma) entered an order that, to permit the Debtor to avert dismissal of his case, afforded the Debtor an opportunity to cure the arrears on his plan. Specifically, the order (i) extended the term of the plan to June 1, 2005 and (ii) required the Debtor to pay the Chapter 13 trustee $17,500 by April 15, 2005 and a further $17,950 by May 31, 2005, failing which the Chapter 13 trustee could file an affidavit attesting to his noncompliance and requesting further action, including dismissal. On April 26, 2005, the Court allowed a motion of the Debtor to extend the time to make the first payment, requiring him to pay $10,000 by April 29, 2005, and additional $7,500 by May 10, 2005.

On or about April 21, 2005, the Debtor sold the Stock without first seeking leave of court to do so or giving notice to the Chapter 13 trustee. He received proceeds from the sale of $13,332.43. According to his testimony, which I credit, he liquidated the Stock in order to fund the payments to the Chapter 13 trustee that were needed to avert dismissal of his case, and he did in fact pay these funds, as supplemented by other monies loaned him by family members, to the Chapter 13 trustee in partial satisfaction of his plan payments obligations.[1]

---

[1] Around this same time, the Debtor, in addition to liquidating the stock, also borrowed money from family members, Effie Messados and Anatasios Fatsis, to help make these payments. By the end of May, 2005, he had borrowed a total of $52,482 from these relatives, but the record is otherwise silent as to when and in what increments these monies were advanced to him. These monies, together with the proceeds of the stock liquidation, greatly exceeded the $27,500 that he paid to the Chapter 13 trustee. The Trustee contends that this is evidence that the monies turned over to the Chapter 13 trustee may have come from another source, and that his purpose in liquidating the stock may not have been to make the necessary payments to the Chapter 13 trustee. In order to reach this conclusion, however, it would be necessary to (i) disbelieve the Debtor's own testimony on the issue, (ii) know precisely when he received the borrowed funds from his relatives, and (iii) know that, if they were received in time to make the payments the Debtor

Specifically, the Debtor made the first $17,500 payment to the Chapter 13 trustee in two installments, one on May 10, 2005 in the amount of $10,000 and another on May 19, 2005 in the amount of $7,500.  On August 11, 2005, the Debtor paid the Chapter 13 trustee an additional $10,000.  Thereafter, he made no further payments to the Chapter 13 trustee.

He subsequently obtained new counsel, with whose help his case remained in Chapter 13 for another two years.  However, on November 19, 2007, the court converted the case to one under Chapter 7, and Joseph Braunstein was appointed Chapter 7 trustee.  On May 13, 2008 The Trustee obtained information from Debtor's counsel that Debtor had sold the Stock on April 21, 2005.

On August 5, 2008, the Trustee filed a motion to hold the Debtor in contempt and for related sanctions on the basis of his unauthorized sale of the Stock, which the Trustee maintained was a violation of the Confirmation Order.  Following an evidentiary hearing and the submission of post-trial briefs, the Court (by Judge Rosenthal) issued an order, dated November 14, 2008, supported by findings of fact and conclusions of law entered the same day, in which the Court held that the sale of the stock constituted a contempt of the Confirmation Order and ordered the Debtor to pay $13,334.43 as a sanction.  In support of this order, the Court held that the sale of the stock was a violation of the Confirmation Order's injunction against sale of property of the estate and its enjoinder to preserve property of the estate.  In his findings of fact, Judge Rosenthal stated:  "His actions were undertaken in bad faith and appear to be motivated by an attempt to pay what was needed to avoid dismissal of the case but less than the full amount he received, including from non-exempt assets."  The Debtor appealed the contempt order to the Bankruptcy Appellate Panel.  After full consideration of the merits, the Panel affirmed the order of contempt, and the Debtor took no further appeal.

---

made to the Trustee, he had not already used them for another purpose.  There is no evidence on these latter issues.  Even if the full $52,482 were advanced before the first payment to the Trustee, it would not necessitate the conclusion that the Stock proceeds were not paid to the Chapter 13 trustee.  And, in any event, the Debtor's testimony is credible.

With respect to his intent in selling the Stock, the Debtor testified at the trial in the present matter that he understood Judge Somma's order to make payments to the Chapter 13 Trustee as a directive that he needed to "get this money" in any possible manner or else his case would be "dropped."  He testified that in selling the Stock, he did not know that he was violating the Confirmation Order.  Rather, he testified, he did so as part of an attempt to comply with the order to make payments to the Chapter 13 trustee.  No evidence has been adduced that the Debtor had actual knowledge of the relevant language in the Confirmation Order, that he understood it, that it's import had ever been discussed with or explained to him by counsel, or that he himself (as opposed to his attorney) had even actually received the Confirmation Order.  There is no evidence that he spoke with an attorney, the Chapter 13 trustee, or any knowledgeable advisor as to his options for complying with the Court's order to make the required payments.

### Discussion

Section 727(a)(6)(A) of the Bankruptcy Code directs the court to deny a debtor a discharge where "the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify."  11 U.S.C. § 727(a)(6)(A). Although the Debtor earlier maintained that his sale of the Stock was not a violation of the Confirmation Order, Judge Rosenthal decided otherwise in the earlier contempt proceedings between the parties, and his contempt order, later affirmed on appeal, is now final and preclusive as to that issue.  Therefore, the sole issue before the court is whether the Debtor's failure to obey the Confirmation Order amounted to a "refusal" to obey within the meaning of § 727(a)(6)(A).  The majority position is that the word "refused" in § 727(a)(6)(A) is more than mere failure to comply.  Refusal "requires a plaintiff to show more than a mere failure to obey a lawful court order.  The plaintiff must show some degree of volition or willfulness on the part of the debtor in failing to comply with the order." *In re Tougas*, 354 B.R. 572, 578 (Bankr. D. Mass.

2006); *In re Jordan*, 521 F.3d 430, 433 (4th Cir. 2008) (same); and *In re Lipp*, 2009 WL

2032127 (Bankr. D. Mass. July 6, 2009) (same).  This Court agrees that the words "refused to

obey" require more than mere failure to obey.  In addition to failure to obey, they require a

degree of scienter—knowledge of the order and understanding of what it required—and a

decision not to abide by it.  Because scienter and intent must usually be demonstrated

indirectly, by inference from other facts, the party objecting to discharge may, in appropriate

circumstances, satisfy this obligation by demonstrating that the debtor received the order in

question and failed to comply with its terms, whereupon the debtor bears the burden of

explaining his noncompliance.  *In re Jordan*, 521 F.3d at 433.  However, in accordance with FED

R. BANKR. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the

burden of proving the objection."), the ultimate burden of proof remains at all times on the party

objecting to discharge, and that party must prove not merely knowledge of the order and failure

to comply, but refusal. The standard of proof is a preponderance of the evidence.

Based on the record in this case, the Court concludes that the Trustee has failed to carry

his burden as to scienter and therefore refusal.  The Debtor maintains that he did not know that

sale of the stock would amount to a violation of a court order.  Rather, acting without the

assistance of counsel and possibly even without knowledge or understanding of the relevant

language in the Confirmation Order, it is possible that the Debtor sold the stock without

knowledge or understanding that he was thereby violating a court order.  Indeed, in view of

Judge Somma's order requiring him to come up with a large sum of money in a relatively short

time in order to avert dismissal of his case, he may well have believed—albeit incorrectly—that

he was doing what Judge Somma had required of him, and even that Judge Somma's order

overrode the relevant language in the Confirmation Order.  On the present record, the Court

cannot make a finding as to what the Debtor knew about and understood the Confirmation

Order when he sold the Stock.  The evidence is thin at best, but the Debtor has adduced

enough evidence to place scienter and specific intent in doubt; and the Trustee, who bears the

6

ultimate burden on the issue, has responded with virtually nothing—indeed has failed to establish that the Debtor even received the Confirmation Order.  The Trustee has not carried his burden of proof.

In the alternative, the Trustee would establish refusal by collateral estoppel, or issue preclusion, arguing that this element was established by Judge Rosenthal's ruling, made in support of his contempt order, that the Debtor, in selling the Stock, had acted in bad faith.  This Court finds no basis for such issue preclusion here.  For the Trustee to avail himself of the doctrine of issue preclusion with respect to a particular issue, he "must demonstrate that: (1) both the contempt proceedings and the confirmation proceedings involved the same issue of law or fact; (2) the parties actually litigated the issue in the confirmation proceedings; (3) the bankruptcy court actually resolved the issue in a final and binding judgment . . . ; and (4) its resolution of that issue of law or fact was essential to its judgment (i.e., necessary to its holding)."  *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995) (citations omitted).  In this case, "refusal" was not necessary to the contempt judgment and therefore is not deemed established by that judgment.  Even bad faith was not necessary to the determination of contempt, which can be based on a simple failure to comply.

Nor is it clear that the determination of bad faith was even predicated on the scienter and decision against compliance that must be shown in support of the present complaint.  The precise configuration of facts on which Judge Rosenthal based his determination of bad faith is unclear—those predicate facts did not necessarily include a knowing determination not to comply.  Therefore, even if bad faith were necessary to the contempt order, it is not clear that that determination is in substance the equivalent of a determination of the elements of refusal.  For these reasons, the element of "refusal" cannot be established here by issue preclusion.

The Trustee having failed to establish refusal either by evidence in this proceeding or by issue preclusion, judgment will enter for the Debtor in this adversary proceeding, and a discharge will enter in his case.

Date:  September 21, 2010

_____
Frank J. Bailey
United States Bankruptcy Judge